LOKEN, Circuit Judge,
concurring in part and dissenting in part.
I concur in the court’s decision to affirm Deborah Carlson’s conviction on Counts 10 and 11. I respectfully dissent from the decision to vacate her conviction on Count 12. Relying on the Ninth Circuit’s decision in United States v. Havelock, 664 F.3d 1284 (9th Cir.2012) (en banc), the court concludes that the term “addressed to any other person” in 18 U.S.C. § 876(d) is limited to natural persons and therefore did not include the threat Carlson mailed to the Scott Lake Veterinary Center. I disagree and would therefore affirm the judgment of the district court.
The Count 12 issue turns on the proper application of the Dictionary Act, 1 U.S.C. § 1, which provides that the word “person” in a statute includes corporations, companies, and other institutional entities, as well as natural persons, “unless the context indicates otherwise.” In Rowland v. California Men’s Colony, 506 U.S. 194, 199-200, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993), a divided Supreme Court construed “context” in this proviso as meaning the *950 text of the statute at issue and other related acts, and “indicates” as a term “excusing the court from forcing a square peg into a round hole.” In declining to apply the Dictionary Act in that case, the majority acknowledged that it must be applied if “the statutes in question manifest ] a purpose that would be substantially frustrated if we did not construe the statute to reach artificial entities.” Id. at 210-11, 113 S.Ct. 716. I conclude that is precisely the situation we face here, as a short foray into history the Ninth Circuit overlooked or ignored in Havelock makes clear.
The precursor to § 876 was first enacted in 1932, largely in reaction to the brutal and notorious kidnaping and murder of Charles Lindbergh’s infant son. See Horace Bomar, The Lindbergh Law, 1 Law & Contemp. Problems 435, 435-38 (1934). The initial statute covered the same ground as § 876(a)-(d), but was more simply worded:
[W]hoever, with intent to extort from any person any money or other thing of value, shall knowingly deposit or cause to be deposited in any post office ... any written or printed letter or other communication ... addressed to any other person, and containing any threat (1) to injure the person, property, or reputation of the addressee or of another or the reputation of a deceased person, or (2) to kidnap any person, or (3) to accuse the addressee or any other person of a crime, or containing any demand or request for ransom or reward for the release of any kidnaped person, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.-
Act of Jul. 8,1932, Pub.L. No. 274, 47 Stat. 649. As explained by its sponsor, an amendment that added the “containing any demand or request for ransom” provision “simply makes it an offense to deposit in the mails a demand for ransom for a kidnapped person.” 75 Cong. Rec. 8852 (1932) (remarks of Sen. Patterson); see 75 Cong. Rec. 13,284 (remarks of Rep. Cochran) (a purpose of the bill “was to amend the postal laws so as to make it a felony to use the mails to demand ransom where a person had been kidnaped”). Nothing in these remarks intimates that a ransom demand would be unlawful only if mailed to a natural person; quite the contrary seems clearly intended. Yet by construing “person” to mean only natural persons all twelve times the word now appears in the more elaborate subsections of § 876, the Ninth Circuit and now this court hold that the statute applied to a demand for ransom addressed to Charles Lindbergh, but not to the same demand addressed to Lindbergh’s employer, or to his church, or to any other “non-natural” person. In my view, nothing could more substantially frustrate the manifest purpose of this statute. Moreover, because the Dictionary Act in substantially its present form was part of the United States Code in 1932, this restrictive interpretation of “person” in § 876 is contrary to the plain language of the initial statute. See Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 688-89, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), quoting Act of Feb. 25, 1871, § 2, 16 Stat. 431.
The Ninth Circuit, and now this court, avoid a reasoned application of the Dictionary Act to § 876 by sheer judicial legerdemain. The twelve uses of “person” in § 876. include uses that obviously refer to natural persons — “the release of any kidnapped person” in § 876(a), the threat to “kidnap” or “injure” a person in §§ 876(b)-(d), and “the reputation of a deceased person” in § 876(d). Therefore, the Ninth Circuit majority reasoned, “the commonsense and long-recognized presumption of uniformity counsels that ‘person’ means a natural person in ‘addressed to any other person’ as well.” Havelock, 664 F.3d at *951 1291. For authority, the court cited only Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). In Brown, the Court did note “a presumption that a given term is used to mean the same thing throughout a statute.” But'it cited only Atlantic Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932), a case decided less than two months before the predecessor to § 876 was enacted. In Atlantic Cleaners, the Court held that the words “trade or commerce” did not have the same meaning in sections 1 and 3 of the Sherman Act, explaining:
Most words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section. Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning. But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.
ífí ^ %
It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the legislature intended it should have in each instance.
Id. at 433, 52 S.Ct. 607 (citations omitted). The Court’s decision in Brown was not to the contrary, and Atlantic Cleaners was construed and applied as written in General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581, 595-96, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004), and cases cited.
Applying these principles, I would apply the Dictionary Act to § 876 consistent with the Fourth Circuit’s interpretation of § 876(b) in United States v. Bly, 510 F.3d 453, 460-61 (4th Cir.2007), and 467 (Motz, J., concurring),[3] and with the concurring opinion in Havelock, 664 F.3d at 1297-1302 (Smith, J., concurring): when any subsection uses the word “person” in a way that can apply only to natural persons, such as kidnaped person, injured person, or deceased person, then the context obviously indicates that the broader Dictionary Act definition does not apply. But when “person” is used more broadly, such as “intent to extort from any person” or “addressed to any other person,” then the manifest purpose of the statute is obviously served by applying the Dictionary Act definition to that specific use, and it must be assumed that Congress so intended.
The court’s strained and textually illogical contrary interpretation of § 876 produces results that can only be labeled absurd. For example, a letter mailed to an employer threatening to kidnap one of its drivers or blow up a facility when employees are present unless a ransom is paid will not violate the statute because the threat to kidnap or injure a natural person was not addressed to a natural person. I conclude this is contrary to the plain meaning and obvious purpose of the stat-. ute and therefore respectfully dissent.

. An additional issue in Bly was whether the statute applied to a threat to injure persons mailed to the University of Virginia, a governmental entity.